## McLean's Estate.

Argued January 18, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Francis J. Murray,* with him *Frank J. McDonnell,* for appellant.

*Charles B. Waller,* with him *Edward Darling* and *William S. McLean, 3rd,* for appellees.

OPINION BY MR. JUSTICE DREW, February 7, 1939:

Percy C. McLean died testate and by his will made appellant, his widow, a residuary beneficiary and appointed as executor one of his brothers. At the time of his death the estate was insolvent by reason of an excess of liabilities over assets of approximately $160,000. Realizing that the creditors would be only partially paid and that the widow and children would receive nothing under the existing conditions, the executor, together with another brother, created a voluntary trust with their own funds for the purpose of immediately purchasing the assets of decedent's estate at the inventory value and holding them in trust for the benefit of the creditors and the balance, if any, to be applied to the maintenance and support of the appellant and the education of her children. This they proceeded to do and the accounts so indicate. Since the estate consisted almost entirely of stocks, by

the use of this trust it was their desire to preserve the securities in case the market should rise, and avoid all chance of further deficit if the market should fall.

In addition the two brothers, pursuant to their agreement, held under the same trust the proceeds of numerous life insurance policies on the life of the decedent and paid therefrom debts of the estate. These policies had originally named appellant as beneficiary. However, decedent during his lifetime became heavily indebted to his two brothers, and prior to his death changed the policies, making them the beneficiaries. While these instruments each contained a provision reserving to the insured the right to change the beneficiary, nevertheless decedent obtained appellant's consent thereto. She signed as one of the witnesses to such changes, and the validity of her signature was not disputed.

On October 28, 1935, the executor filed his first and final account, and on the same day the two brothers filed their joint account as trustees under the trust agreement. The court below, in confirming both accounts, dismissed appellant's exceptions.

There is no merit whatsoever in any of the numerous assignments of error to the dismissal of appellant's exceptions to the two accounts. In these assignments, which are largely repetitious, appellant questions the validity of the sale of the assets by the executor, the fairness of the price received, the accounting for the proceeds, and the refusal of the lower court to impress a constructive trust on the proceeds of the insurance policies.

Immediately upon qualifying, the executor proceeded to sell decedent's assets at their inventory value. No testimony was offered which would raise the slightest inference that the prices obtained were not the fair market value at the time of sale. There was no exception taken to the fact that the sale was a private one. The executor properly performed his duty when he thus made prompt sale of the property, and therefore he cannot

justly be charged with fraud or gross carelessness in so doing.

Appellant's claim that the proceeds of the insurance policies should be impressed with a constructive trust is wholly without merit. The accusation that the decedent's signatures to the endorsements changing the beneficiaries were forgeries has no foundation in fact. Appellant's own testimony clearly indicates that decedent himself signed the documents and that she acted as a witness. Her attempt to question decedent's mental capacity must also be disregarded, for the evidence fully sustained the finding of the court below that decedent was in full possession of his mental faculties at the time the changes were made.

Although the two brothers were entitled to the proceeds of the insurance policies, having been named beneficiaries prior to decedent's death at a time when he was heavily indebted to them, nevertheless they saw fit to hold the proceeds in trust for decedent's creditors and for the sole benefit of the very person who now claims they acted fraudulently, and for her children. It is difficult to vision what more the two men could have done under the circumstances to protect decedent's estate, and to see that his creditors were paid and his family provided for. There is not the slightest evidence of any wrongdoing on their part. They certainly have not been unjustly enriched; on the contrary, the record discloses that they have suffered personal losses in their attempt to protect their deceased brother's affairs of over $120,000, which amount does not include what they had advanced to him prior to his death. It is indeed difficult to imagine a claim less meritorious than that presented by appellant. Based on false accusations of fraud and forgery against two brothers attempting to liquidate the insolvent estate of a deceased brother in the best interest of the creditors and the beneficiaries under his will, leaving to themselves only unpaid liabilities upon which

they are personally liable, the claim obviously presented nothing worthy of consideration by this court.

After careful examination and consideration of the record and briefs of both appellant and appellees, we are convinced that the court below properly dismissed appellant's exceptions.

Decree affirmed, at appellant's cost.